

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WALLACE JOHN BEAR,<br><br>Defendant. | No. CR-08-64-GF-SEH<br>CV-10-70-GF-SEH<br><br>**ORDER** |

On November 1, 2010, Defendant/Movant Wallace John Bear timely moved to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Bear is a federal prisoner proceeding pro se.

I.   **Preliminary Screening**

The Court must conduct a preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); see also Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. It has done so.

## II. Background

On May 12, 2008, a grand jury indicted Bear on one count of second-degree murder, a violation of 18 U.S.C. § 1111. Jurisdiction was based on 18 U.S.C. § 1153(a). Indictment (doc. 1) at 1-2. Chad Wright was appointed to represent him. Order (doc. 13).

On September 12, 2008, Bear filed a fully executed plea agreement. In exchange for Bear's guilty plea, the United States promised to recommend a two-point downward adjustment of the advisory guideline range to reflect Bear's acceptance of responsibility and to move for an additional one-point adjustment. Plea Agr't (doc. 19) at 2 ¶ 4, 6 ¶ 11, 7 ¶ 12. The Agreement expressly recognized that "[t]he United States and the Defendant reserve all right, without condition, to make any appropriate sentencing recommendation," and that "the Court is not bound by the recommendations of either party, and may sentence the Defendant to a sentence anywhere within the advisory guideline range or may impose any reasonable sentence outside that range." Id. at 6 ¶ 11, 7 ¶ 11. On September 30, 2008, Bear pled guilty in open court. Minutes (doc. 25).

A presentence report was prepared. On December 17, 2008, the Court gave notice that it would consider departing from the advisory guideline range up to the maximum sentence of life imprisonment based on the nature of the offense and

2

Bear's criminal history, likely recidivism, and dangerousness. Notice (doc. 27). Each party filed a sentencing memorandum. Def. Sentencing Mem. (doc. 28); U.S. Sentencing Mem. (doc. 29).

On January 8, 2009, Bear was sentenced to serve life in prison. If he is released, he will be placed on a five-year term of supervised release. Minutes (doc. 31); Judgment (doc. 34) at 2-3.

Bear appealed the sentence. On November 25, 2009, the sentence was affirmed. United States v. Bear, No. 09-30022 (9th Cir. Nov. 25, 2009) (unpublished mem. disp.) (doc. 45).

### III. Allegations

Bear alleges that trial counsel was ineffective because 1) he did not advise that a sentence could be imposed outside the advisory guideline range and 2) he chose to argue that the United States breached the plea agreement rather than filing a motion to withdraw Bear's guilty plea. Mot. Supp. (doc. 47-1) at 1.

Bear additionally claims that the Court failed to ensure his plea was voluntary and knowing. He asserts that he was "under the impression" he had to convince the Court to accept his plea if he wanted to be sentenced within the advisory guideline range, and, if his guilty plea was not accepted, he would be "force[d] . . . into trial." Id. at 2. Bear claims his attorney "convinced him that he

3

would ultimately lo[]se," resulting in a "life sentence." Id.

Bear attached to his motion an affidavit from his counsel, Chad Wright.

## IV. Analysis

Every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland v. Washington, 466 U.S. 668, 689 (1984). The Court's analysis follows the Strickland directive.

### A. Voluntariness of Bear's Guilty Plea

Bear must show that counsel provided unreasonable advice and "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Contrary to his first allegation, Bear knew he could be sentenced outside the advisory Guidelines range. Plea Agr't (doc. 19) at 7 ¶ 11; see also Change of Plea Tr. (doc. 39) at 5:5-17, 11:20-12:9, 22:12-16.

Bear says he pled guilty to avoid being "force[d] . . . into trial." Mot. Supp. (doc. 47-1) at 2. He was convinced he would be found guilty and then would be sentenced to the statutory maximum of life in prison. Id. Counsel advised Bear to plead guilty, believing that the United States could present a compelling case

4

against Bear and that "the plea agreement required the government, after considering all applicable departures, to make a recommendation within the Sentencing Guidelines range." Wright Aff. (doc. 48-1) at 2 ¶ 4; see also Offer of Proof (doc. 23); Change of Plea Tr. (doc. 39) at 26:19-22.

The question then becomes: If counsel had known the United States might or might not recommend a within-Guidelines sentence, would he still have advised Bear to plead guilty? See Hill, 474 U.S. at 59-60. By clear and convincing evidence already in the record, counsel would have done so.

There is no realistic doubt that Bear would have been convicted at trial. He agreed with the United States' offer of proof, including the following facts:

> At some point an altercation ensued between Joseph DuBois and the Defendant's brother. Bystanders eventually stopped the altercation and the two men were separated from each other. From that point forward, DuBois posed no threat to the Defendant, his brother, or anyone else at the party.
>
> The Defendant's brother showed his injuries to the Defendant. The Defendant looked at DuBois, who was standing nearby. The Defendant pulled out a knife. The Defendant then stabbed DuBois in the chest several times in a back-handed fashion. The injuries which ensued from the stabbing killed DuBois.

Offer of Proof (doc. 23) at 2 ¶¶ 2-3; see also Change of Plea Tr. (doc. 39) at 25:24-26:23.

Bear was among people who knew him. They were subpoenaed to testify.

5

Presentence Report at ¶ 81 (quoting letter written by Bear). Bear made at least two incriminating statements after the incident. Presentence Report at ¶¶ 16, 20. The victim's blood was found on Bear's pants and shirt. Wright Letter (doc. 48-2) at 1. There was no evidence of severe mental disease or defect. Presentence Report at ¶¶ 95-107. Bear had a previous conviction for voluntary manslaughter arising from the stabbing to death of a man in 1999. The United States intended to introduce evidence of that conviction "to prove intent, knowledge, plan, modus operandi, absence of reasonable defense of self or another, and absence of mistake or accident." Notice Under Fed. R. Evid. 404(b) (doc. 12) at 2. The two incidents were remarkably similar, except that in the instant offense Bear could not have acted in the heat of passion. Neither a defense nor conviction on a lesser included offense were realistic possibilities.

Wright and Bear also knew "the Court is not bound by the recommendations of either party, and may sentence the Defendant to a sentence anywhere within the advisory Guideline range or may impose any reasonable sentence outside that guideline range." Plea Agr't (doc. 19) at 7 ¶ 11; see also Change of Plea Tr. (doc. 39) at 5:5-17, 11:20-12:9, 22:12-16. A recommendation from the United States was worth obtaining, but the parties could not determine the sentence. Bear knew his own history and was convinced that if he was convicted at trial, he would be

6

sentenced to life in prison. See Presentence Report at ¶¶ 41-84, ¶¶ 138-140; Mot. Supp. (doc. 47-1) at 2. There is no reason to believe he was incorrect.

Counsel had to balance a three-level reduction in the total offense level under the advisory Guidelines and the possibility of a favorable sentencing recommendation from the United States against Bear's prospect of an acquittal at trial. Based on what counsel knew at the time Bear was contemplating his plea, reasonable counsel could only have advised him to plead guilty. Bear's first claim is denied.

### B. Consultation re: Withdrawal of Guilty Plea

By the time of the sentencing hearing – at which, Bear now claims, counsel should have consulted with him about the possibility of withdrawing his guilty plea – the circumstances of the case had changed. The Presentence Report was completed on December 10, 2008. Presentence Report at 1 ("Date Report Revised"). The probation officer identified several factors that might warrant an upward departure or an above-Guidelines sentence. Presentence Report at ¶¶ 138-140; see also id. at ¶¶ 42-48 (listing juvenile dispositions not scored under U.S.S.G. § 4A1.2(e)(3)), ¶¶ 69-84 (listing disciplinary incidents from jails and BOP custody, including numerous instances of disobeying orders from officers, intoxication, possession of shanks or other weapons, and fighting and assault

7

against inmates and officers).

Shortly after December 10, 2008, the Court read and fully considered the Presentence Report. It was, and remains, among the most disturbing in this Court's experience. Bear is a heedless and violent person who has no respect for other human beings. In trouble numerous times as a juvenile, Bear never gave the slightest indication of reform, despite numerous interventions. Id. at ¶¶ 42-47, 54-68, 100-106. Every attempt to supervise him in the community was a total failure. Id. at ¶¶ 48-49. Twelve days after discharging his federal sentence for voluntary manslaughter, he stabbed and killed Joseph DuBois. Id. at ¶ 49.

On December 17, 2008, the Court issued notice under Fed. R. Crim. P. 35(h) that a sentence up to the statutory maximum would be considered. Thereafter, the parties filed their own recommendations.

At the sentencing hearing on January 8, 2009:

> [T]he government advocated that Mr. Bear's case was one of the rare cases where the Sentencing Guidelines should not apply and recommended that Judge Haddon . . . consider[] life in prison.
>
> When the government took this stance, Mr. Bear leaned over and told [Wright] that he did not believe that this recommendation was what he expected under the plea agreement.

Wright Aff. (doc. 48-1) at 2 ¶¶ 8-9. Wright also believed that the government's statements at sentencing violated the plea agreement:

8

| | |
|---|---|
| Mr. Wright: | I'm going to object to the government's statements today as a breach of the plea agreement. What induced Mr. Bear to plead guilty was the agreement by both parties that the sentencing guidelines should apply. And that he would get a reduction based on a point reduction for the plea agreement and joining into the plea agreement. And all of that factors into the sentencing guideline score. |
| | What I just heard Ms. French say is that this Court should start from the statutory maximum and work down. I think that renders any sort of agreement we had to get any sort of benefit from the plea agreement illusory at that point, and I just want to enter my objection. |
| The Court: | Well, Mr. Wright, I have accepted this plea agreement. Do I hear you saying that you want to back out of it and your client wants to back out of it and go to trial? Because if he does, I will allow that; and we will set this case for trial. |
| Mr. Wright: | No, Your Honor. I'm saying that the government breached any sort of benefit by making the benefit illusory, and that specific performance of the plea agreement should be enforced at that point. |

Sentencing Tr. (doc. 40) at 11:9-12:5.

Bear was present with Wright in open court. He gave no indication that he wanted to consult with Wright or wanted to withdraw his plea and proceed to trial. In addition, Wright did not know, at the time an opportunity to withdraw the plea was offered, what Bear's sentence would actually be. He knew the Court had

9

already indicated the possibility of an upward departure or above-Guidelines sentence up to the statutory maximum of life in prison. He also knew he could have been wrong about what the plea agreement required of the United States. When specifically asked about withdrawing Bear's guilty plea, he attempted to preserve what he believed to be the United States' obligation under the agreement. None of these facts defeat or even diminish the reasonableness of Wright's or Bear's calculation that going to trial was more likely to result in a life sentence than pleading guilty.

Bear must show that counsel's performance was objectively unreasonable. See Strickland, 466 U.S. at 687-88. He must also show a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. See id. at 694. Bear identifies no action or inaction on counsel's part that made his situation worse or that could have made it better. Neither Bear nor Wright, in his affidavit, suggest that trial was a realistic option. Bear specifically alleges he pled guilty to avoid being "force[d] . . . into trial" because he believed a jury would convict him and he would be sentenced to life in prison. Bear only contacted Wright to say "he thought that going to trial was a better option and . . . he wanted to withdraw his plea" at some point "[d]uring the appeal process" when he had already begun serving his life sentence. Wright Aff. (doc. 48-1) at 3 ¶ 13.

10

At the time Wright and Bear had to choose between withdrawing the guilty plea or proceeding to sentencing, Bear knew he had no realistic defense, the prosecution possessed overwhelming evidence, it was highly likely he would be sentenced to life in prison following conviction by a jury, and the Court – independent of a recommendation from either party or the probation officer – was contemplating an above-Guidelines sentence. He did not know what his sentence would be if he pled guilty, but he knew his advisory guideline calculation was significantly lowered by such plea. There is no reasonable probability that Bear would have withdrawn his plea before sentencing if he had consulted with counsel. This claim is denied.

## V.   Certificate of Appealability

A certificate of appealability is granted only where the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). There is no such showing here. There is no reasonable probability that a person with Bear's record, facing the virtual certainty of conviction at trial, would have chosen to go to trial. Pleading guilty was his only realistic strategy to avoid a life sentence. The fact that it did not work as he intended does not render counsel ineffective.

Bear's motion asserts simply that he would not have pled guilty and would

11

have taken his chances at trial if he had known he would be sentenced to life in prison. Relief is not available on that basis. There is no reason to encourage further proceedings. See Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A certificate of appealability is not warranted.

ORDERED:

1. Bear's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (doc. 47) is DENIED.

2. The Clerk of Court shall enter, by separate document in the civil case, a judgment against Bear and in favor of the United States.

3. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Bear files a notice of appeal.

4. The Clerk of Court shall terminate all pending motions in this case and in the civil case, CV-10-70-GF-SEH, and shall close the civil file.

DATED this 3rd day of January, 2011.

SAM E. HADDON
United States District Judge

12